UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

GERALD JAMES CARTER,

      Petitioner,

v.                                     Case No. 3:17-cv-709-J-34PDB

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

      Respondents.

## ORDER

### I. Status

Petitioner Gerald Carter, an inmate of the Florida penal system, initiated this action on June 2, 2017,[1] by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1). Carter is proceeding on an amended petition (Amended Petition; Doc. 7). In the Amended Petition, Carter challenges a 2011 state court (Bradford County, Florida) judgment of conviction for shooting into an occupied dwelling and possession of a firearm by a convicted felon, and a 2014 judgment of conviction for attempted second-degree murder with a firearm. Carter raises three grounds for relief. See Amended Petition at 5-10.[2] Respondents have submitted an answer in opposition to the Amended Petition. See Answer to Amended Petition for Writ of Habeas Corpus (Response; Doc.

---

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).

[2] For purposes of reference, the Court will cite the page number assigned by the Court's electronic docketing system.

18) with exhibits (Resp. Ex.).[3] Carter filed a brief in reply and a supplement to his reply brief. <u>See</u> Reply to Petition Amended Writ of Habeas Corpus (Reply; Doc. 20); Supplementation of Application (Supp. Reply; Doc. 29). On November 8, 2019, Carter filed, by mailbox rule, a motion to amend or supplement his petition (Motion; Doc. 31), which the Court will address below. On December 4, 2019, the Court directed Respondents to supplement the records of their Response with portions of the trial transcript that originally were not included as an exhibit. <u>See</u> Doc. 33. Respondents provided the Court with the supplemental records on December 5, 2019.[4] This case is ripe for review.

## II. Relevant Procedural History

On September 15, 2011, the State of Florida (State) charged Carter with attempted first-degree murder (count one), shooting into an occupied building (count two), and possession of a firearm by a convicted felon (count three). Resp. Ex. A at 28-29. Carter proceeded to a jury trial, at the conclusion of which the jury found Carter guilty of the lesser-included offense of attempted second-degree murder, with a specific finding that he possessed, discharged, and caused serious bodily injury to the victim; and guilty as charged as to counts two and three, with a specific finding as to count three that he actually possessed a firearm. <u>Id.</u> at 56-60. On November 2, 2011, the circuit court sentenced Carter to a term of incarceration of life in prison as to count one, with a twenty-

---

[3] Respondents filed exhibits to their response to the original Petition and added additional exhibits in their response to the Amended Petition. The Court will refer to both sets of exhibits as Resp. Ex. __.

[4] The Court will refer to these records as Supp. Resp. Ex. __.

five-year minimum mandatory; fifteen years in prison as to count two; and three years in prison as to count three, with a three-year minimum mandatory. Id. at 61-68.

Carter appealed his convictions and sentences to Florida's First District Court of Appeal (First DCA). Id. at 75. In his initial brief, Carter, with the assistance of counsel, raised two issues:  (1) the circuit court fundamentally erred in giving an incorrect jury instruction on attempted voluntary manslaughter; and (2) the prosecutor's misconduct during closing arguments rose to the level of fundamental error and denied him the right to a fair trial. Resp. Ex. C. The State filed an answer brief. Resp. Ex. D. On March 6, 2013, the First DCA issued an opinion affirming the conviction and sentence in part and reversing it in part. Resp. Ex. E. Specifically, the First DCA reversed Carter's conviction for attempted second-degree murder based on Williams v. State, 38 Fla. L. Weekly S99, S100 (Fla. Feb. 14, 2014) and remanded for a new trial on count one but affirmed his convictions and sentences for counts two and three. Resp. Ex. E. The First DCA issued the Mandate on March 22, 2013. Id.

On April 15, 2013, Carter filed a motion to mitigate sentence pursuant to Florida Rule of Criminal Procedure 3.800(c), Resp. Ex. F, which the circuit court denied on April 26, 2013. Resp. Ex. G. Following remand, the State filed an amended Information charging Carter with one count of attempted second-degree murder. Resp. Ex. H at 7. On September 18, 2014, following a second jury trial, the jury found Carter guilty as charged and made specific findings that Carter actually possessed and discharged a firearm, causing great bodily injury to the victim. Id. at 28-29. That same day, the circuit court sentenced Carter to a term of incarceration of life in prison, with a minimum mandatory sentence of twenty-five years to life. Id. at 30-34.

Carter again appealed his conviction and sentence to the First DCA. Id. at 42. In his initial brief, Carter raised two issues:  (1) the circuit court erred in denying his request to question the victim on his prior acts of aggression and prior convictions for violent offenses; and (2) the circuit court fundamentally erred by giving an instruction on the justifiable use of deadly force that contained conflicting provisions on the duty to retreat. Resp. Ex. J. The State filed an answer brief. Resp. Ex. K. On March 30, 2016, the First DCA per curiam affirmed Carter's conviction and sentence without issuing a written opinion and on April 15, 2016, it issued the Mandate. Resp. Ex. M.

On September 23, 2016, Carter filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 (Rule 3.850 Motion). Resp. Ex. N at 11-24. In his Rule 3.850 Motion, Carter alleged that:  (1) he was convicted of a crime (count two) not charged; (2) he was convicted of a crime (count three) not charged; (3) counsel failed to adequately investigate his case; (4) counsel failed to investigate the victim's medical documentation; (5) counsel misadvised him not to testify at trial; and (6) counsel failed to call an alibi witness and request an alibi instruction. Id. The circuit court denied the Rule 3.850 Motion on November 15, 2016. Id. at 25-34. On August 25, 2017, the First DCA per curiam affirmed the denial of relief. Resp. Ex. O. Carter moved for rehearing, which the First DCA denied on October 6, 2017. Resp. Ex. P. The First DCA issued the Mandate on October 27, 2017. Resp. Ex. T. Carter sought to appeal the First DCA's decision to the Florida Supreme Court; however, the Florida Supreme Court dismissed the appeal for lack of jurisdiction. Resp. Ex. U.

In early 2017, the Florida Department of Corrections (DOC) sent the circuit court a letter requesting clarification concerning the length of the minimum mandatory sentence

imposed as to count one because the judgment and sentence form stated the minimum sentence was twenty-five years to life. Resp. Ex. Q at 12. On March 1, 2017, in response to the DOC's letter, the circuit court ordered the clerk to amend the judgment and sentence to comport with the oral pronouncement to reflect a minimum mandatory life sentence and to amend the crime and statute numbers to reflect that count one was a first-degree felony. Id. at 13-21.

On March 13, 2017, Carter filed another motion for postconviction relief pursuant to Rule 3.850 (Second Rule 3.850 Motion), in which he argued his counsel was ineffective for failing to object to the self-defense jury instructions. Id. at 22-37. The circuit court denied the motion on May 3, 2017. Id. at 38-41. On August 28, 2017, the First DCA per curiam affirmed the denial of this motion without a written opinion and issued the Mandate on September 2017. Resp. Ex. R.

On October 11, 2017, Carter filed a motion to correct illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800(a) (Rule 3.800(a) Motion), in which he argued his sentence on count one exceeded the statutory maximum. Resp. Ex. V at 12-16. The circuit court denied the Rule 3.800(a) Motion on October 27, 2017. Id. at 19-21. On April 3, 2018, the First DCA per curiam affirmed the denial of relief and it issued the Mandate on May 1, 2018. Resp. Ex. W.

On November 14, 2017, Carter filed another successive motion for postconviction relief pursuant to Rule 3.850 (Third Rule 3.850 Motion). Resp. Ex. Y at 103-17. In the motion, he raised the following grounds for relief:  (1) counsel failed to request a jury instruction for a lesser-included offense; (2) the verdict form was improper; (3) he was not given twenty-four hours notice of an amendment to the Information; (4) counsel failed to

properly move for a judgment of acquittal; and (5) counsel misadvised him to testify at trial. Id. On November 28, 2017, Carter moved to amend his Third Rule 3.850 Motion. Resp. Ex. X at 12. On December 6, 2017, the circuit court entered an order denying Carter's Third Rule 3.850 Motion, id. at 14-20, and on December 11, 2017, it denied as moot Carter's motion to amend. Id. at 74. On April 3, 2018, the First DCA per curiam affirmed the denial of relief without a written opinion and on May 1, 2018, issued the Mandate. Resp. Ex. BB.

Carter filed yet another Rule 3.850 motion for postconviction relief (Fourth Rule 3.850 Motion) on December 22, 2017. Resp. Ex. CC at 12-20. In the Fourth Rule 3.850 Motion, Carter raised the following claims:  (1) postconviction counsel was ineffective for failing to file a timely Rule 3.850 motion; (2) the circuit court committed fundamental error by instructing the jury on a crime not charged in the Information; (3) the State failed to allege the essential elements of the crime in the body of the Information; and (4) trial counsel was ineffective for failing to adequately investigate. Id. The circuit court denied the Fourth Rule 3.850 Motion on January 16, 2018. Id. at 27-35. On December 14, 2018, the First DCA per curiam affirmed the denial of the motion without a written opinion. See Carter v. State, 259 So. 3d 80 (Fla. 1st DCA 2018).

On August 24, 2018, Carter filed a pro se petition for writ of habeas corpus with the First DCA, in which he argued that his appellate counsel should have raised a Batson[5] claim on direct appeal. Resp. Ex. FF. The First DCA denied the petition on the merits on January 14, 2019. See Carter v. State, 262 So. 3d 264 (Fla. 1st DCA 2019). Carter sought review in the Florida Supreme Court, but on February 1, 2019, the Florida Supreme Court

---

[5] Batson v. Kentucky, 476 U.S. 79 (1986).

dismissed the appeal for lack of jurisdiction. See Carter v. State, Case No. SC19-165, 2019 WL 413719 (Fla. February 1, 2019).

### III. One-Year Limitations Period

This proceeding was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016), cert. denied, 137 S. Ct. 2245 (2017). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Carter's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

### V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga.

Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); <u>Richter</u>, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." <u>Id.</u> at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u>

> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." <u>See</u> <u>Burt v. Titlow</u>, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); <u>accord</u> <u>Brumfield v. Cain</u>, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first

instance.'"[6] <u>Titlow</u>, 571 U.S. at ---, 134 S. Ct. at 15 (quoting
<u>Wood v. Allen</u>, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175
L.Ed.2d 738 (2010)).

<u>Tharpe v. Warden</u>, 834 F.3d 1323, 1337 (11th Cir. 2016), <u>cert</u>. <u>denied</u>, 137 S. Ct. 2298

(2017). Also, deferential review under § 2254(d) generally is limited to the record that was

before the state court that adjudicated the claim on the merits. <u>See</u> <u>Cullen v. Pinholster</u>,

563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1)'s "requires an examination

of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners

whose claims have been adjudicated in state court." <u>Burt v. Titlow</u>, 134 S. Ct. 10, 16

(2013). "Federal courts may grant habeas relief only when a state court blundered in a

manner so 'well understood and comprehended in existing law' and 'was so lacking in

justification' that 'there is no possibility fairminded jurists could disagree.'" <u>Tharpe</u>, 834

F.3d at 1338 (quoting <u>Richter</u>, 562 U.S. at 102-03). This standard is "meant to be" a

"difficult" one to meet. <u>Richter</u>, 562 U.S. at 102. Thus, to the extent that the petitioner's

claims were adjudicated on the merits in the state courts, they must be evaluated under

28 U.S.C. § 2254(d).

### B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas

action in federal court, a petitioner must exhaust all state court remedies that are available

for challenging his state conviction. <u>See</u> 28 U.S.C. § 2254(b)(1)(A). To exhaust state

remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to

---

[6] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." <u>Clark v. Att'y Gen., Fla.</u>, 821 F.3d 1270, 1286 n.3 (11th Cir. 2016), <u>cert</u>. <u>denied</u>, 137 S. Ct. 1103 (2017).

the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365-366, 115 S. Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule.

> See, e.g., Coleman,[7] supra, at 747–748, 111 S. Ct. 2546;
> Sykes,[8] supra, at 84–85, 97 S. Ct. 2497.  A state court's
> invocation of a procedural rule to deny a prisoner's claims
> precludes federal review of the claims if, among other
> requisites, the state procedural rule is a nonfederal ground
> adequate to support the judgment and the rule is firmly
> established and consistently followed. See, e.g., Walker v.
> Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179
> L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct.
> 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring
> procedurally defaulted claims from being heard is not without
> exceptions. A prisoner may obtain federal review of a
> defaulted claim by showing cause for the default and
> prejudice from a violation of federal law. See Coleman, 501
> U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

> the procedural default "must result from some objective factor
> external to the defense that prevented [him] from raising the
> claim and which cannot be fairly attributable to his own
> conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir.
> 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[9]
> Under the prejudice prong, [a petitioner] must show that "the
> errors at trial actually and substantially disadvantaged his
> defense so that he was denied fundamental fairness." Id. at
> 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

---

[7] Coleman v. Thompson, 501 U.S. 722 (1991).
[8] Wainwright v. Sykes, 433 U.S. 72 (1977).
[9] Murray v. Carrier, 477 U.S. 478 (1986).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

## C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough

v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521

(2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052.  A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-

clad rule requiring a court to tackle one prong of the Strickland test before the other."

Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be

satisfied to show a Sixth Amendment violation, "a court need not address the performance

prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing

Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is

easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice,

which we expect will often be so, that course should be followed." Strickland, 466 U.S. at

697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, - U.S. at -, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, - U.S. at -, 131 S. Ct. at 788.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014); Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

As Ground One, Carter alleges that the circuit court violated his right to due process and to confront the witnesses against him under the Sixth and Fourteenth Amendments to the United States Constitution when it denied his request to cross-

examine the victim on prior acts, incidents of aggression, and convictions for violent offenses. Amended Petition at 5. According to Carter, this testimony was relevant to his self-defense theory as it would have shown that the victim was the aggressor. Id.

Respondents contend that Carter failed to exhaust this claim because, although he raised a similar claim on direct appeal following his second trial, he did not raise this claim as a violation of his federal constitutional rights. Response at 19-27. Instead, Respondents maintain that Carter argued only in terms of state law, which renders the claim procedurally defaulted. Id. Carter asserts that the state courts inadvertently overlooked his federal claim through no fault of his own. Supp. Reply at 6-8. According to Carter, his appellate brief specifically cited to and relied upon Chambers v. Mississippi, 410 U.S. 284 (1973). Supp. Reply at 6-8. Carter further contends that, even if procedurally defaulted, the Court should review the merits of his claim because he is innocent and to do otherwise would constitute a fundamental miscarriage of justice. Id.

The record reflects that Carter's trial counsel argued, without any reference to federal law, in a motion for new trial that "Defendant was not allowed to fully cross examine the alleged victim witness at trial." Resp. Ex. H at 38. In his initial brief on direct appeal following his second trial, Carter's appellate counsel raised a similar claim. Resp. Ex. J at 14-16. Counsel framed this argument as an abuse of discretion on a ruling regarding the admissibility of evidence and cited extensively to Florida statutes and case law. While counsel cited to Chambers for the proposition that an accused has a fundamental right to present witnesses in his own defense, he only did so to make an analogous argument that "[c]ertainly this principal includes other forms of evidence as well." Id. at 16. The Court finds that Carter failed to fairly present a federal constitutional

challenge to the circuit court and this lone citation to a federal case on appeal did not fairly present this claim to the First DCA to provide that court a meaningful opportunity to review Carter's federal constitutional claim as alleged here. See McNair v. Campbell, 416 F.3d 1291, 1303-04 (11th Cir. 2005) (citing a single federal case and a brief mention of federal constitutional provisions in a brief, are the types of "needles in the haystack" that do not satisfy the exhaustion requirement). As such, the claim in Ground One is  not exhausted. Carter's allegation concerning a fundamental miscarriage of justice is insufficient to overcome this procedural default because he has not alleged any new facts to demonstrate his innocence. See Calderon, 523 U.S. at 559; Ward, 592 F.3d at 1157. Accordingly, relief on this claim is due to be denied as it is unexhausted.

Nevertheless, even if properly exhausted this claim is meritless. Generally, claims related to the admissibility of evidence are not cognizable in a § 2254 petition unless the error would result in the denial of fundamental fairness in the criminal trial. See Tidwell v. Butler, 415 F. App'x 979, 980 (11th Cir. 2011) (citing Osborne v. Wainwright, 720 F.2d 1237, 1238 (11th Cir. 1983)); Baxter v. Thomas, 45 F.3d 1501, 1509 (11th Cir. 1995). The Court finds that the state court's decision to limit cross-examination of the witness regarding his propensity for violence or his previous bad acts did not deny Carter a fundamentally fair trial, particularly in light of the fact that Carter was able to discuss prior violent encounters he had with the victim and the victim's alleged violent and dangerous behavior during Carter's direct testimony. Supp. Resp. Ex. 2 at 156-58. The jury heard this testimony, yet still found Carter's self-defense theory unavailing. As such, the state court's evidentiary ruling did not violate Carter's constitutional rights. See Tidwell, 415 F. App'x at 980 (holding that "district court did not err in finding the claim was not cognizable

on federal habeas review because the admission of evidence concerning Tidwell's prior bad acts was a question of state law that did not call into question the fundamental fairness of Tidwell's trial."). In light of the above analysis, relief on Carter's claim in Ground One is due to be denied.

## B. Ground Two

In Ground Two, Carter asserts that he was initially charged with attempted second-degree murder causing serious bodily injury. Amended Petition at 7. However, less than twenty-four hours before his trial, the State amended the Information, deleting "serious bodily injury" and replacing it with "great bodily harm." Id. Carter maintains that this added an element to the offense and surprised the defense on the eve of trial, which resulted in Carter not having a sufficient opportunity to prepare a defense. Id. According to Carter, this was a double jeopardy violation and a due process violation. Id.

Respondents contend this claim is unexhausted because he did not raise this as a federal constitutional issue in state court. Response at 27-35. Carter counters that the state court overlooked the federal claim he raised. Supp. Reply at 9-10. Additionally, he asserts that even if technically unexhausted, his counsel's failure to raise this issue on appeal constitutes cause to overcome this procedural default, and the Court should also address the merits of the claim because he is actually innocent. Id. at 10-14.

The record reflects that Carter raised a similar claim as ground three of his Third Rule 3.850 Motion. Resp. Exs. V at 37; Y at 107. However, Carter did not assert a double jeopardy or due process violation; instead, he generally alleged a violation of his right to a fair trial. Id. In denying relief on this claim, the state circuit court first found the claim was not cognizable in a Rule 3.850 Motion and alternatively found the claim was meritless

because the record reflected Carter was on notice that the State intended to pursue a sentencing enhancement, which was the basis for the amended information. Resp. Ex. X at 17. Carter appealed the denial of his Third Rule 3.850 Motion but did not argue this claim in terms of federal constitutional law, as he relied exclusively on Florida law in support of reversal. Resp. Ex. Z at 8-9. The First DCA per curiam affirmed the denial of relief without a written opinion. Resp. Ex. BB. Based on this record, it is readily apparent that the state courts did not overlook Carter's federal claims; instead, he never raised a federal claim with the circuit court or First DCA. Therefore, this claim is unexhausted because Carter never afforded the state courts a fair opportunity to address the merits of his constitutional claim.

Regarding Carter's contention that cause exists to overcome his failure to exhaust this claim, "a claim for ineffective assistance of counsel, if both exhausted and not procedurally defaulted, may constitute cause." Henry v. Warden, Ga. Diag. Prison, 750 F.3d 1226, 1230 (11th Cir. 2014); see also Carrier, 477 U.S. at 488; Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009) (citing Edwards v. Carpenter, 529 U.S. 446, 451 (2000)) ("An attorney's constitutional ineffectiveness in failing to preserve a claim for review in state court may constitute 'cause' to excuse a procedural default."). But the petitioner must first present his or her ineffective assistance claim to the state courts as an independent claim before he may use it to establish cause to excuse the procedural default of another claim. Carrier, 477 U.S. at 488; see also Henderson v. Campbell, 353 F.3d 880, 896 n.22 (11th Cir. 2003). If the secondary ineffective assistance claim is itself procedurally defaulted, the "procedurally defaulted ineffective assistance of counsel claim can serve as cause to excuse the procedural default of another habeas claim only if the

habeas petitioner can satisfy the 'cause and prejudice' standard with respect to the ineffective assistance claim itself." Henderson, 353 F.3d at 897 (citing Edwards, 529 U.S. at 446 and Carrier, 477 U.S. at 478). Here, Carter never raised a claim of ineffective assistance of appellate counsel in state court; therefore, it is also unexhausted and he has failed to demonstrate cause and prejudice to overcome the procedural default of his ineffective assistance of appellate counsel claim. As such, Carter has failed to establish cause to overcome his failure to exhaust the claim in Ground Two. See id. Additionally, Carter's claim of actual innocence fails because he has not alleged any new facts in support of this contention. See Calderon, 523 U.S. at 559; Ward, 592 F.3d at 1157. Therefore, relief on his claim in Ground Two is due to be denied as the claim is unexhausted.

Nevertheless, even if the claim in Ground Two were properly exhausted, it is without merit. The record reflects that the State amended the Information to allege "great bodily injury" instead of "serious bodily injury." Resp. Exs. A at 28; H at 7. In Florida, a finding that a defendant discharged a firearm that caused "great bodily harm" mandates the imposition of a twenty-five-year to life minimum mandatory sentence. § 775.087(2)(a)3, Fla. Stat. However, the amendment to the charging document had no impact on Carter's defense or sentencing possibilities because under Florida law the terms "serious bodily injury" and "great bodily injury" are synonymous for purposes of section 775.087. See Mendenhall v. State, 999 So. 2d 665, 667 (Fla. 5th DCA 2008) ("There is no significant difference between the terms 'great bodily harm' and 'serious bodily injury.' Accordingly, the trial court did not err in enhancing the defendant's sentence pursuant to the terms of the statute and the jury's finding."). As such, the amendment did

not change any of the essential elements of the crime or Carter's potential sentence. Moreover, the record reflects that the victim suffered a gunshot wound, Resp. Ex. I1 at 63, 66, which caused significant damage to the victim's arm, Supp. Resp. Ex. 1 at 13-26, a fact that did not change from the first trial to the second trial. Therefore, Carter's allegation that this constituted a "surprise" is without merit. Based on the above analysis, relief on the claim in Ground Two is due to be denied.

### C. Ground Three

Carter alleges that his counsel was ineffective during his <u>first trial</u> for:  (1) failing to object to improper closing arguments where the prosecutor commented on the right of the defendant not to dispute the allegations; and (2) failing to request an alibi jury instruction. Amended Petition at 8.

#### Closing Arguments

Carter raised this claim in ground four of his Fourth Rule 3.850 Motion. Resp. Ex. CC at 17. However, the circuit court did not address the merits of this claim; instead, the court only addressed two other claims of deficient performance that Carter also raised in ground four. <u>Id.</u> at 34-35. The First DCA per curiam affirmed the denial of relief without a written opinion. <u>See</u> <u>Carter</u>, 259 So. 3d 80. Based on this record, the Court finds Carter properly exhausted this claim. <u>See</u> <u>Ogle v. Johnson</u>, 488 F.3d 1364, 1369 (11th Cir. 2007) ("A habeas petitioner exhausts available state remedies when he fairly presents his claim for a state remedy even if the state never acts on his claim."). Because the state court did not adjudicate this portion of Carter's claim on the merits, the Court must conduct a de novo review of this sub-claim instead of a deferential review. <u>See</u> <u>Mason v. Allen</u>, 605

F.3d 1114, 1119 (11th Cir. 2010) ("When, however, a claim is properly presented to the state court, but the state court does not adjudicate it on the merits, we review de novo.").

As an initial matter, the Court finds this claim fails as it is entirely conclusory because Carter has failed to identify any specific comment to which he asserts counsel should have objected nor does he give a citation to the portion of the record where it could be found. See Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (recognizing that vague, conclusory, speculative, or unsupported claims cannot support an ineffective assistance of counsel claim). Nevertheless, in ground four of his Fourth Rule 3.850 Motion, Carter asserted that the prosecutor made the following comment:

> Now, you're also going to be asked to make a finding of guilty or not guilty on shooting of an occupied dwelling. I'm not going to spend a whole lot of time on that. I'd just ask you to rely on your own recollections. The State would argue it was completely undisputed in this case.

Resp. Ex. CC at 17. During closing arguments "a prosecutor may 'assist the jury in analyzing, evaluating, and applying the evidence' and, therefore, may 'urge[ ] the jury to draw inferences and conclusions from the evidence produced at trial." United States v. Adams, 339 F. App'x 883, 886 (11th Cir. 2008) (quoting United States v. Johns, 734 F.2d 657, 663 (11th Cir.1984)). The Eleventh Circuit has explained:

> Prosecutorial reference to the "uncontradicted" state of evidence constitutes impermissible comment on the defendant's exercise of the right to remain silent only if: (1) the prosecutor's manifest intention was to comment upon the defendant's failure to testify; or (2) the remark was such that the jury would naturally and necessarily take it to be a comment on the failure of the defendant to testify. United States v. Garcia, 655 F.2d 59, 64 (5th Cir. 1981); United States v. Magana-Arevalo, 639 F.2d 226, 229 (5th Cir. 1981). To determine the manifest intent and the natural and necessary effect of allegedly impermissible comments, we must examine the comments in the context within which they

were made. <u>United States v. Garcia</u>, 655 F.2d at 64; <u>United States v. Sorzano</u>, 602 F.2d 1201, 1202 (5th Cir. 1979), cert. denied, 444 U.S. 1018, 100 S.Ct. 672, 62 L.Ed.2d 648 (1980).

<u>Williams v. Wainwright</u>, 673 F.2d 1182, 1184 (11th Cir. 1982).

The record reflects that following this statement, the prosecutor commented on the victim's children's testimony regarding the shot fired into their home and the forensic evidence demonstrating the presence of a bullet fragment in the home. Resp. Ex. B at 323-24. Based on the context of this statement, the Court finds that the prosecutor's comment was not an impermissible comment on Carter's right to remain silent. No where in the closing arguments does the prosecutor comment upon or suggest that evidence was lacking because of Carter's refusal to take the stand. Moreover, the comment did not naturally and necessarily refer to Carter's failure to testify. Instead, the prosecutor relied on the fact that the forensic evidence and the children's testimony supported this conclusion and there was no evidence to refute it. <u>See</u> <u>Williams</u>, 673 F.2d at 1185 ("the prosecutor's use of the word 'uncontradicted,' when viewed in context, was addressed to the testimony of the victim," and "[t]he remark simply referred to one area of that testimony that was not disputed. No direct mention was made of the petitioner's failure to testify. We cannot say that the jury necessarily would have taken the challenged statements to be a comment on petitioner's failure to testify."). Thus, any objection to the prosecutor's comment would have been meritless. As such, counsel cannot be deemed deficient. <u>See</u> <u>Diaz v. Sec'y for the Dep't of Corr.</u>, 402 F.3d 1136, 1142 (11th Cir. 2005) (holding counsel cannot be ineffective for failing to raise a meritless argument); <u>Bolender v. Singletary</u>, 16 F.3d 1547, 1573 (11th Cir. 1994) (noting that "it is axiomatic that the failure to raise

nonmeritorious issues does not constitute ineffective assistance."). Therefore, relief on this claim is due to be denied.

<u>Alibi Jury Instruction</u>

Carter raised a similar claim that counsel failed to request an alibi instruction in his Rule 3.850 Motion. Resp. Ex. N at 21-23. The circuit court initially denied this claim as procedurally barred and moot. <u>Id.</u> at 30-32. In his Fourth Rule 3.850 Motion, Carter alleged that he had hired postconviction counsel to file a Rule 3.850 motion, but counsel failed to do so and, as a result, a number of claims, including this claim, were denied as procedurally barred. Resp. Ex. CC at 14. The circuit court determined that postconviction counsel did fail to timely file a motion due to a debilitating illness and addressed the merits of this claim. <u>Id.</u> at 30. In denying relief on the claim, the circuit court explained:

> In Ground Six, Defendant alleges ineffective assistance of counsel for failing to call his sister as an alibi witness at trial, and failing to request an alibi defense jury instruction. The record refutes his first assertion, reflecting that Defendant's sister was called as a witness and provided alibi testimony. Defendant is correct that the jury was not provided an alibi defense jury instruction. A claim of ineffective assistance of counsel for failure to request a jury instruction on a defendant's alibi defense is a cognizable claim for post-conviction relief. <u>See</u> <u>Moragne v. State</u>, 761 So. 2d 440 (Fla. 2d DCA 2000). Although it was error to fail to request the alibi jury instruction, any prejudice is speculative. The record reflects that the jury was instructed on weighing the evidence and evaluating witness testimony. An alibi defense is not outside the common understanding of a jury, and the jury did not accept his sister's version of events. Further, this Court notes that to the extent there was prejudice at the first trial for failure to instruct the jury on an alibi defense, such prejudice is negated by the fact that Defendant abandoned his alibi defense at the second trial and admitted to shooting the victim. Thus, this ground is without merit. Accordingly, claim 1 of Defendant's instant motion is **DENIED**.

Id. at 33 (record citations omitted). The First DCA per curiam affirmed the denial of relief without a written opinion. See Carter, 259 So. 3d 80.

To the extent that the First DCA decided the claim on the merits,[10] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Carter is not entitled to relief on the basis of this claim.

Nevertheless, even if the First DCA's adjudication of this claim is not entitled to deference, this claim is meritless. The record reflects that at Carter's first trial, the victim testified that he personally knew Carter as they grew up in the same neighborhood and had previously gotten into a fight. Resp. Ex. B at 113-14. The victim also identified Carter as the shooter. Id. at 113-21. One of the victim's daughters testified that she was in the house when she heard a loud noise, which caused her to look outside a window to see what happened. Id. at 132-33. She observed a man standing in the road holding his hand up as if he had a gun in it and saw her father running towards their house holding his bloody arm. Id. According to the victim's daughter, she got a good enough look at the shooter to make a positive identification to investigators and, at trial, she made an in-court

---

[10] In looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

identification of Carter as the shooter. Id. at 133. She also testified that she observed Carter leaving the scene in a black Grand Am. Id. at 134.

The State also called Adam Nickelson, who testified that he personally knew Carter. Id. at 197-98. According to Nickelson, he met up with Carter the night before the shooting. Id. at 198-99. Nickelson testified that he allowed Carter to borrow his black Grand Am the morning of the shooting. Id. at 199-200. When Carter returned, he yelled at Nickelson that he got in a fight and he needed to go to Gainesville, so the two of them drove there. Id. at 200-02. While in the car, Nickelson testified that Carter made a phone call to a person Nickelson thought was a child of Carter's in which Carter said he loved the child and that he was going to be going away for a while. Id. at 202-03. Several days later, Nickelson read that Carter was a suspect in a shooting, at which time Nickelson came forward to the police and told them about his interaction with Carter on the day of the shooting. Id. at 203-05.

Another State witness, Cecil Coleman, testified that he knew of both Carter and the victim, although he did not know either of them personally. Id. at 211-12. Coleman testified that he saw Carter the morning of the incident with a handgun. Id. at 213-14. According to Coleman, he later parked his car on the same street on which the victim lived, and observed Carter and the victim begin to argue in the street. Id. at 215-16. Coleman testified that he thought the argument was over as the parties began to walk away from each other, but then he saw Carter turn around and start shooting at the victim. Id. at 216-18.

Regarding Carter's alibi defense, during cross-examination of Detective Kevin Mueller, he testified that he interviewed Carter during his investigation and Carter told him

that he was not at the location of the incident. Id. at 187. The defense called one witness in support of an alibi defense, Carter's sister, Toccara Carter. Id. at 246. According to Ms. Carter, who had previously been convicted of filing a false report of a crime; Id. at 246, 253; she had picked up her brother the day before the incident and brought him to her house in Gainesville, where Carter then stayed for a couple weeks. Id. at 246-48. Ms. Carter testified that her brother never left her house and was in Gainesville the entire day of the incident. Id. at 248. During cross-examination, Ms. Carter discussed receiving a call from Carter while he was in jail. Id. at 262. She testified that she did not remember Carter telling her "code" when he began talking with her, but that she did remember him repeatedly saying "Wednesday at 6:00, Jackie Thursday morning," although she claimed she did not know what that meant. Id. at 262-63. During the conversation, Ms. Carter told Carter that "they're recording our conversations." Id. at 263.

In rebuttal, the State recalled Mueller to discuss his interviews of Carter and Ms. Carter, and his review of the jail call, which was introduced as evidence. Mueller testified that on the jail call Carter repeatedly used the word "code" and told Ms. Carter that "Wednesday at 6:00. That's when you came and got me. Jackie, Thursday morning, when she came by to see me." Id. at 269. Carter also stated, "I just talked to Mueller and I want to make sure we're on the same page," at which point Ms. Carter reminded him that the phone call was being recorded. Id. Carter replied, "I know, that's why I'm speaking in code." Id.

Although defense counsel never requested an alibi instruction and the circuit court did not read this instruction to the jury, Resp. Ex. A at 36-55, based on the record as laid out above, the Court finds Carter cannot demonstrate prejudice. Florida's alibi instruction

reads, in pertinent part, "If you have a reasonable doubt that the defendant was present at the scene of the alleged crime, it is your duty to find the defendant not guilty." Fla. Std. Jury Instr. (Crim.) 3.6(i) (2010). The evidence presented at trial did not establish a reasonable doubt that Carter was not at the scene of the crime. The victim and his daughter both positively identified Carter as the shooter, so too did an eyewitness who observed the incident from down the street. Moreover, Nickelson's testimony established that Carter was not in Gainesville at the time of the shooting and that Carter drove his car, the same car the witnesses described Carter entering after shooting the victim, on the day of the incident. Carter's alibi witness was less than credible, having previously been convicted of making false statements and being impeached with a jail phone call that showed Carter instructing her how to testify. Accordingly, even if counsel had requested the alibi instruction, there is no reasonable probability the outcome of the trial would have been different.[11] Therefore, Carter is not entitled to relief, and his claims in Ground Three are due to be denied.

### VII. Motion to Amend Petition

In his Motion, Carter requests leave to file a second amended petition for writ of habeas corpus in order to: (1) delete reference to "double jeopardy" in his claim in Ground Two; (2) add additional facts to Ground Three; and (3) add a fourth ground for relief alleging prosecutorial misconduct. Motion at 1-2. Carter attached a proposed second amended petition to his Motion, which details the claims he seeks to raise. See Doc. 31-1. Federal Rule of Civil Procedure 15(a)(2) instructs, in part, that "[t]he court should freely

---

[11] Notably, in Carter's second trial, he abandoned his alibi defense and admitted he shot the victim, but only did so in self-defense. Supp. Resp. Ex. 2 at 126-34.

give leave [to amend] when justice so requires." However, denial of a motion to amend is justified if amendment would be futile because the amended petition would still be subject to dismissal. See Hall v. United Ins. Co. of America, 367 F.3d 1255, 1262-63 (11th Cir. 2004). Here, the Court finds amendment would be futile; therefore, the Motion is due to be denied.

Deleting reference to "double jeopardy" in Ground Two would not change the Court's analysis of his claim because it would remain unexhausted, and as explained above, the amendment to the Information did not change the essential elements of the crime charged. As to his amendment to Ground Three, the Court finds that, contrary to Carter's contentions, he did not add additional facts; instead, he made the claim concerning prosecutorial misconduct even more conclusory by deleting any reference to the actual comment he found objectionable. As such, his amended Ground Three would be wholly conclusory and, therefore, insufficient to warrant federal habeas relief. See Tejada, 941 F.2d at 1559. Moreover, nothing in the amended claim would change the Court's analysis of Ground Three as set forth above. Lastly, Carter's additional claim as raised in ground four of his proposed amended petition would likewise not entitle him to federal habeas relief because it is also conclusory. Carter states "[p]rosecutorial misconduct during closing argument[s] rose to the level of fundamental error and denied appellant of [sic] his right to a fair trial." That is the extent of his claim in ground four. As noted above, Carter had two trials, but he fails to inform the Court which trial he is discussing here, let alone describe with any factual detail the alleged misconduct. Therefore, relief on this claim would be denied as the claim is conclusory because Carter does not satisfy the heightened pleading requirements governing federal habeas

petitions. See Mayle v. Felix, 545 U.S. 644, 648 (2005) (noting that Rule 2(c) of the Rules Governing Habeas Corpus Cases requires a detailed statement that specifies all the grounds for relief and states facts in support of each ground); McFarland v. Scott, 512 U.S. 849, 856 (1994) (explaining that Rule 2(c) of the Rules Governing Habeas Corpus Cases mandates a heightened pleading requirement); Borden v. Allen, 646 F.3d 785, 810 (11th Cir. 2011) (Rules Governing Section 2254 Cases in the United States District Court "mandate 'fact pleading' as opposed to 'notice pleading.'"). In light of the fact that Carter's proposed amended petition does not raise any claims that would entitle him to federal habeas relief, the Motion is due to be denied. See Hall, 367 F.3d at 1262-63.

## VIII. Certificate of Appealability

## Pursuant to 28 U.S.C. § 2253(c)(1)

If Carter seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Carter "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's

assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.      The Amended Petition (Doc. 7) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.      Carter's Second Motion to Amend (Doc. 31) is **DENIED**.

3.      The Clerk of the Court shall enter judgment denying the Amended Petition and dismissing this case with prejudice.

4.      If Carter appeals the denial of the Amended Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

5.      The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 21st day of May, 2020.

MARCIA MORALES HOWARD
United States District Judge

Jax-8

C:      Gerald Carter #G11093
        Counsel of record